UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SLEP-TONE ENTERTAINMENT                                     :
CORPORATION, *a North Carolina Corporation*,:
                                          Plaintiff,:       14 CV 10040 (JPO)
                                                            :
               -v-                                          :   OPINION AND ORDER
                                                            :
GOLF 600 INC., *et al.*,                                    :
                                          Defendants.:
                                                            :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

  Plaintiff Slep-Tone Entertainment Corporation filed this trademark infringement action on December 22, 2014. (Dkt. No. 1.) All but one of the Defendants have been dismissed. Slep-Tone now moves for summary judgment against the remaining Defendant, Clontarfscouse LLC. For the reasons that follow, that motion is granted.

**I. Background**

  Slep-Tone is a manufacturer and distributor of karaoke accompaniment tracks—popular songs rerecorded without lead vocals and synchronized with a visual display of the lyrics — marketed under the brand "Sound Choice." Clontarfscouse is a company that operates a bar named "The River Roadhouse" in Hastings-on-Hudson, New York.

  Since 1995, Slep-Tone has owned various trademarks on the words and design for "Sound Choice" relating to musical compositions and karaoke shows. It consistently protects these marks by displaying them with the symbol "®".

  Slep-Tone sells or licenses its karaoke tracks as CDs or MP3s with graphics to karaoke hosts and venues. Since 2010, professional karaoke hosts licensing the MP3s—known as Slep-Tone's GEM Series—must execute a licensing agreement and comply with certain restrictions.

Slep-Tone permits these hosts to copy its tracks to nonoriginal media, including a hard drive, so long as each copy is traceable to a unique and unused Sound Choice track owned by the host on a one-to-one basis.

To prevent trademark and copyright infringement, Slep-Tone performs regular investigations.  In one such investigation, Slep-Tone concluded that Justine Davis, doing business as Nightstar DJ and Karaoke ("Nightstar"), hosted over 20 weekly karaoke events in New York City and Westchester County using Slep-Tone products and the Sound Choice mark in an unlicensed manner.  Specifically, during the course of its investigation, Slep-Tone representatives observed Nightstar-affiliated karaoke hosts using and displaying the Sound Choice trademarks without Slep-Tone's consent and in violation of Slep-Tone's licensing restrictions.  Slep-Tone eventually sued Nightstar for trademark infringement in a case that settled in June 2015.  *See Slep-Tone Enter. Corp. v. Davis*, No. 14-CV-7260-JPO.  After the settlement with Nightstar, Slep-Tone analyzed one of Nightstar's computers and discovered that the computer contained over 20,000 Sound Choice-branded songs, although it had the right to maintain digital copies of only about 6,000 songs.

Clontarfscouse paid Nightstar to provide karaoke services at its bar.  On June 25, 2014, Slep-Tone observed a Nightstar-affiliated host using nonoriginal tracks and graphics depicted with the Sound Choice trademark.  It sent Clontarfscouse letters on September 23 and October 24, 2014, warning Clontarfscouse that Nightstar had infringed Slep-Tone's trademarks, informing  Clontarfscouse that the bar risked liability, and encouraging it to participate in Slep-Tone's "safe harbor" program to avoid liability.  Notwithstanding its receipt of these letters, Clontarfscouse continued to host Nigthstar karaoke events.

Slep-Tone filed this action on December 22, 2014.  Clontarfscouse was served on December 23, 2014, and it answered on March 23, 2015.  (Dkt. Nos. 22, 38.)  After the close of discovery, on February 25, 2016, Slep-Tone moved for summary judgment against Clontarfscouse.  On March 14, Clontarfscouse's counsel notified the Court that they had been unable to contact their client, a "difficulty throughout the case."  (Dkt. No. 84 at 1.)  They asked to be relieved as counsel, and for the Court to extend Clontarfscouse's time to reply to the motion until April 4, 2016.  On March 16, the Court extended Clontarfscouse's time to oppose the motion to April 7 and permitted Clontarfscouse's counsel to withdraw.  The Order reminded Clontarfscouse that a company may not appear *pro se*, and it warned that if Clontarfscouse "<u>fails (1) to obtain new counsel, and (2) to file an opposition brief by April 7, 2016, the motion for summary judgment will be treated as unopposed.</u>"  (Dkt. No. 85 at 2.)  Clontarfscouse has neither obtained new counsel nor opposed the motion.

**II.**     **Discussion**

A movant is entitled to summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court bases its judgment on the party's submitted statement of material facts and the admissible evidence in the record cited therein.  *Id.* 56(c); *see* S.D.N.Y. Local R. 56.1.  In deciding the motion, the Court views "all facts in the light most favorable to the non-moving party," and the motion is denied if the opposing party establishes a genuine issue of fact or if the governing law "preclude[s] a grant of summary judgment."  *Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Mfrs. Inc.*, No. 13-CV-7741, 2015 WL 9255340, at *2 (S.D.N.Y. Dec. 17, 2015).

Where, as here, a party has not opposed a motion for summary judgment, "the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). Accordingly, the court must review the record to "determine whether the legal theory of the motion is sound." *Id.* "A district court is required to examine the record and legal theories in greater detail when the non-moving party is unrepresented." *City of New York v. Gordon*, No. 12-CV-4838, 2015 WL 9646053, at *3 (S.D.N.Y. Dec. 10, 2015).

Slep-Tone's complaint includes four claims: two arising under federal law and two under New York law. (Dkt. No. 1.) It seeks summary judgment only as to liability, and only as to the two federal claims—federal trademark infringement and unfair competition. (Dkt. No. 81 at 1 n.1.) *See* 15 U.S.C. §§ 1114 (trademark infringement), 1125(a) (unfair competition).

For its theory of liability, Slep-Tone relies on contributory trademark infringement—that is, liability "derive[d] from the common law of torts" for "culpably facilitating the infringing conduct of the counterfeiting vendors." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010). As the Supreme Court explained in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982), the core of this doctrine is that a manufacturer or distributor infringes when it "intentionally induces another to infringe a trademark" or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Tiffany*, 600 F.3d at 104 (quoting *Inwood*, 456 U.S. at 854).

There are two issues in this case: whether *Inwood*'s test for contributory trademark infringement applies to Clontarfscouse, and if so, whether Contarfcouse infringed.

### A. Does *Inwood* apply to Clontarfscouse?

"The limited case law leaves the law of contributory trademark infringement ill-defined." *Tiffany*, 600 F.3d at 105. It is well settled that *Inwood*'s two-part test governs the scope of contributory trademark infringement by manufacturers and distributors. *Inwood*, 456 U.S. at 854. The Second Circuit has left open the *Inwood* test's applicability outside the context of manufacturers and distributors, but other circuits have extended it to "providers of services." *Tiffany*, 600 F.3d at 104; *see, e.g.*, *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1142, 1148-49 (7th Cir. 1992) (Cudahy, J.). Courts have included within the definition of service providers a "venue[] that provides a service," such as a forum through which infringement occurs. *See Tiffany (NJ), INc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 505-06 (S.D.N.Y. 2008), *rev'd on other grounds*, 600 F.3d at 114 (evaluating eBay as a forum for infringing sales); *see id.* at 504-06 (collecting cases). It follows that Clontarfscouse is enough of a service provider for the test to apply here. Clontarfscouse's bar is a venue that provides a forum to Nightstar, and Clontarfscouse benefits from Nightstar's infringing karaoke services.

It is true that Clontarfscouse pays Nightstar to provide the services, while in the typical case, the venue is paid by the infringer. *See Tiffany*, 576 F. Supp. 2d at 505-06. But this is a distinction without a difference. What matters is a venue's responsibility for acts that another commits through its forum, not whether the venue is paying for the other's presence. *See Tiffany*, 600 F.3d at 103 (explaining that this doctrine is derived from the common law of torts); *Hard Rock*, 955 F.2d at 1148-49 ("[W]e have treated trademark infringement as a species of tort and have turned to the common law to guide our inquiry into the appropriate boundaries of liability"); *Restatement of the Law (Second)—Torts* § 877 & cmt. d (explaining that a landowner is equally liable "for the activity of servants on his land" and for "permit[ting] others not his

servants to use his land as licensees"); *cf. 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1252 (10th Cir. 2013) (explaining that contributory trademark infringement is available against a company whose paid contractors infringed a third party's mark).

This extension of contributory trademark liability to service providers, however, comes with a caveat. Some courts have required that the provider exercise "sufficient control over the means of the infringing conduct." *Tiffany*, 600 F.3d at 105. Insofar as that requirement applies here, it is satisfied here. *See Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07-CV-6959, 2010 WL 4968072, at *4 (S.D.N.Y. Dec. 6, 2010). Clontarfscouse admits that it had control and legal authority over its employees and contractors. It could have directed Nightstar to use only licensed karaoke tracks or could have found a different karaoke provider. Once it was aware of Nightstar's infringement, Clontarfscouse could have used its employees to monitor Nightstar to prevent infringement, just as it monitors other activities in the bar. Yet Clontarfscouse took none of these actions. *See Tiffany*, 600 F.3d at 106-09 (applying the doctrine to eBay, which reactively removed challenged listings and terminated sales); *see also Omega SA v. 375 Canal, LLC*, No. 12-CV-6979, 2013 WL 2156043, at *2-3 (S.D.N.Y. May 20, 2013). Accordingly, the Court concludes that a theory of contributory trademark liability against Clontarfscouse will lie. Other courts in similar situations have reached the same conclusion. *See, e.g.*, *Slep-Tone Entm't. Corp. v. Elwood Enters., Inc.*, No. 13-C-7346, 2014 WL 1612891, at *4 (N.D. Ill. Apr. 21, 2014); *Slep-Tone Entm't Corp. v. Snappers Bar & Grill, Inc.*, No. 8:12-CV-157-T-30EAJ, 2012 WL 4174864, at *1-2 (M.D. Fla. Sept. 19, 2012).

B.   Did Clontarfscouse Infringe?

Applying the *Inwood* test, "there are two ways in which a defendant may become contributorily liable for the infringing conduct of another: first, if the service provider 'intentionally induces another to infringe a trademark,' and second, if the service provider 'continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement." *Tiffany*, 600 F.3d at 106 (quoting *Inwood*, 456 U.S. at 854) (alteration in original); *see, e.g.*, *Omega SA*, 2013 WL 2156043, at *2-3. In the services context, this second prong requires that the "service provider . . . have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of [the particular infringing items] is necessary." *Tiffany*, 600 F.3d at 107. Slep-Tone does not argue that Clontarfscouse induced another to infringe on its marks. The issue is whether the second prong of the test is satisfied.

Nightstar infringed Slep-Tone's trademarks. "To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004); *see Opal Fin. Grp., Inc. v. Opalesque, Ltd.*, 634 F. App'x 26, 27 (2d Cir. 2015) (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)) (citing 15 U.S.C. §§ 1114, 1125(a)). As registered trademarks, Slep-Tone's marks are presumed to merit protection. *NYP Holdings v. N.Y. Post Pub. Inc.*, 63 F. Supp. 3d 328, 335 (S.D.N.Y. 2014); *see Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 266 (2d Cir. 2011) ("[R]egistration of a federal mark confers upon the owner of the mark a presumption that the owner has the exclusive right to use the mark nationwide . . . ." (citing 15 U.S.C. § 1115(a)). And by copying and displaying Slep-Tone's tracks, Nightstar produced and used

counterfeit marks—identical marks on the same products offered by the same vendors.  Many courts in this district have held that "counterfeit marks are inherently confusing," satisfying the likelihood of confusion prong.  *E.g. C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013) (citing 15 U.S.C. § 1127).  In any event, the Court would reach the same conclusion after consideration of the relevant factors.  *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, -- F.3d --, 2016 WL 2893172, at *5 (2d Cir. May 18, 2016) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) (Friendly, J.)).  And there is no apparent trademark defense that would succeed.  *See, e.g.*, *Slep-Tone Entm't Corp. v. Sellis Enters., Inc.*, 87 F. Supp. 3d 897, 903-08 (N.D. Ill. 2015) (rejecting a variety of legal defenses in a similar case).

The question remains whether Contarfcouse is contributorily liable for that infringement.  As discussed above, Clontarfscouse provided services to Nightstar.  It also had the requisite knowledge.  Once Clontarfscouse received warning letters from Slep-Tone, it "knew or had reason to know" that Nightstar was infringing on Slep-Tone's trademarks.  This knowledge was more than "general knowledge" or "reason to know" of the infringement.  *Tiffany*, 600 F.3d at 107.  Clontarfscouse's relationship was with "*identified individuals known by it* to be engaging in continuing infringement . . . ."  *Id.* at 108 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 339 n.19 (1984)).  That is sufficient evidence that Clontarfscouse knew of "specific instances of actual infringement."  *Id.* at 107; *see id.* at 109 ("A service provider is not, we think, permitted willful blindness."); *see also Coach Inc. v. Goodfellow*, 717 F.3d 498, 504 (6th Cir. 2013); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 249 (S.D.N.Y. 2010).  And despite this knowledge, Clontarfscouse continued to contract with Nightstar, benefiting from the ongoing infringement.

Slep-Tone has shown a sound legal theory and factual basis for its claims. It is entitled to summary judgment.

## III. Conclusion

Slep-Tone's motion for summary judgment is GRANTED. It is directed to file a status letter or motion as to damages within 30 days of the date of this Order.

The Clerk of Court is directed to close the motion at docket number 80.

SO ORDERED.

Dated: June 16, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge